IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEBRA A. LUSTER-WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 08 C 533 |
| v. | ) | |
| | ) | Judge Darrah |
| GRANT THORNTON LLP | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO ENFORCE THE PARTIES' SETTLEMENT
AGREEMENT AND TO DISMISS PLAINTIFF'S COMPLAINT WITH PREJUDICE**

Defendant, Grant Thornton LLP ("Grant Thornton" or the "Firm"), by and through its counsel, respectfully moves this Court to enforce an oral settlement agreement that the parties reached during a settlement conference before Magistrate Judge Maria Valdez on July 23, 2008, and to dismiss Plaintiff Debra Luster-Wilson's ("Plaintiff") Complaint with prejudice in accordance with the terms of the settlement agreement.  In further support of its Motion, Grant Thornton states as follows:

**I.      Undisputed Facts**

1.      Plaintiff, a former temporary employee of Grant Thornton, filed suit against Grant Thornton alleging employment discrimination under Title VII of the Civil Rights Act of 1964, as amended.  On or about March 28, 2008, the Court granted Plaintiff's motions to proceed *in forma pauperis* and to appoint counsel.

2.      On July 23, 2008, the parties attended a settlement conference before Magistrate Judge Maria Valdez.  Plaintiff was represented at the settlement conference by her court-appointed counsel, Kimberly Ross and Geoffrey Waguespack of Cremer Kopon Shaughnessy & Spina.

3.      Following a settlement conference that lasted at least four hours, Plaintiff agreed to settle her claims against Grant Thornton.  In exchange for a substantial monetary payment, Plaintiff agreed to, among other things, dismiss her federal court lawsuit, release Grant Thornton from all liability, keep the terms of the settlement agreement confidential (with the exception that she could disclose the terms of the agreement to a few specific individuals), and not disparage the Firm or its employees.[1]  Several of the obligations in the agreement applied to both parties, including the confidentiality and the non-disparagement provisions.  The parties also agreed that the parties would formalize the terms of the settlement in a written settlement agreement to be prepared by Grant Thornton's counsel.

4.      During the July 23 settlement conference, Magistrate Judge Valdez confirmed with each party and its/her respective counsel in private that the parties had reached a settlement agreement.  Magistrate Judge Valdez further confirmed with the parties in private the terms of the settlement, including the terms outlined in Paragraph 3, above.  When the parties and their respective counsel were then brought together by Magistrate Judge Valdez in her chambers, she (Magistrate Judge Valdez) confirmed that an agreement had been reached, and she verified the terms of the deal.  Everyone in chambers, including Plaintiff, agreed that a settlement agreement had been reached.  Magistrate Judge Valdez then instructed the parties' counsel to complete the Court's four-page "Settlement Checklist/Term Sheet" (the "Term Sheet") to document the parties' agreement.

5.      Grant Thornton's counsel and Plaintiff's counsel prepared and completed the Term Sheet at counsel's table in Magistrate Judge Valdez's courtroom.  Plaintiff stood near the table while counsel were completing the Term Sheet, and Plaintiff's counsel made certain that

---

[1] Because the parties agreed that the material terms of the settlement agreement are confidential, Grant Thornton is not disclosing the settlement figure in this Motion. If the Court requires disclosure of the figure, Grant Thornton asks that it be permitted to do so in a sealed document.

Plaintiff understood the different terms that were being documented. Indeed, at one point, when the parties' counsel were completing the Confidentiality section of the Term Sheet, Plaintiff demanded that she be permitted to disclose the terms of the settlement to her "best friend," Delphine Hayslett-Jones. Grant Thornton agreed, and accordingly, Ms. Hayslett-Jones was added to the confidentiality exclusions in the Term Sheet. The Term Sheet reflects the material terms of the settlement agreement, including that the parties would execute a more formal written settlement agreement at a later date. (A copy of the Term Sheet, with the payment amount redacted, is attached hereto as Exhibit A.)

6.      Once the Term Sheet had been completed, Grant Thornton's counsel executed the document on the Firm's behalf. (*See* Exhibit A.) Plaintiff's counsel then asked Plaintiff to sign the Term Sheet, to which Plaintiff responded: "I changed my mind. I'm not signing it." Plaintiff "changed her mind" not because Grant Thornton tried to introduce any new material term into the agreement, but rather because she was no longer satisfied with the monetary amount of the settlement. In fact, as Plaintiff's counsel were meeting privately with Magistrate Judge Valdez after Plaintiff stated that she was reneging on the agreement, Grant Thornton's counsel clearly overhead Plaintiff telling someone on her cell phone that the settlement amount was "insulting" and "a slap in the face." (*See* Declaration of Chad W. Moeller, attached hereto as Exhibit B.) Thus, it is clear that Plaintiff "changed her mind" merely because she had second thoughts about accepting the terms of the settlement agreement that she had already agreed to. Simply put, she was experiencing "buyer's remorse".

7.      After Plaintiff notified the parties' counsel that she had changed her mind, Grant Thornton's counsel stated in no uncertain terms to both Plaintiff's counsel and Magistrate Judge Valdez that it was Grant Thornton's position that the parties had reached a settlement agreement and that if Plaintiff attempted to back out of the deal, the Firm would file the instant motion.

8.      After the parties' counsel notified Magistrate Judge Valdez that Plaintiff had changed her mind, Magistrate Judge Valdez met with Plaintiff in private for approximately 30 minutes.  Following the meeting, Magistrate Judge Valdez informed the parties that she was giving Plaintiff until noon on July 31 to advise the Court whether she was moving forward with the settlement agreement.  Magistrate Judge Valdez told the parties' counsel that she made clear to Plaintiff that Plaintiff could *not* use the seven-day period to try to re-negotiate the deal and/or get more money out of Grant Thornton.

9.      On July 23, Magistrate Judge Valdez entered a minute order relating to the July 23 settlement conference, stating: "Settlement conference held on 7/23/08.  General terms of settlement reached.  Parties to contact [the Judge's clerk] by noon on 7/31/08 regarding status of settlement."  (A copy of the July 23 minute order is attached hereto as Exhibit C.)

10.     On July 28, Grant Thornton's counsel sent a draft written Settlement Agreement and General Release to Plaintiff's counsel, which was contemplated by both the terms of the verbal settlement agreement and the terms of the Term Sheet.  The parties' counsel ultimately made some relatively minor revisions to the Settlement Agreement and General Release, and to date, the Settlement Agreement and General Release reflects the terms of the verbal settlement agreement and the terms of the Term Sheet.

11.     Despite Magistrate Judge Valdez's July 23 admonition, Plaintiff *did* use the seven-day consideration period to try to squeeze more money out of Grant Thornton.  Plaintiff's counsel communicated to Grant Thornton's counsel that Plaintiff was willing to move forward with the settlement agreement if and only if Grant Thornton increased the settlement payment by 72%.  Not surprisingly, Grant Thornton rejected Plaintiff's attempt to re-negotiate the agreement and reminded Plaintiff's counsel that Magistrate Judge Valdez was clear that Plaintiff was barred

from trying to get more money from the Firm.  Plaintiff's counsel did not disagree, but rather stated that she felt compelled to pass on Plaintiff's latest demand.[2]

12.     On the morning of July 31, Plaintiff's counsel and Grant Thornton's counsel informed Magistrate Judge Valdez's clerk that Plaintiff refused to honor the terms of the settlement agreement.   Later that day, Magistrate Judge Valdez entered a minute order acknowledging that Plaintiff "advised the court that the settlement previously reached has been rejected."  (A copy of the July 31 minute order is attached hereto as Exhibit D.)

## II.    This Court Should Enforce the Settlement Agreement and Dismiss Plaintiff's Complaint with Prejudice

13.     Where the plaintiff's underlying lawsuit alleges employment discrimination in violation of federal law, courts require both that the agreement be knowing and voluntary and that the agreement be valid under state contract law.  *Mia v. Potter*, 2008 WL 2570829 (7th Cir. 2008), *citing Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 507 (7th Cir. 2007).  Here, Plaintiff cannot dispute that the parties reached an enforceable settlement agreement during the July 23 settlement conference.

### A.     Plaintiff Knowingly and Voluntarily Agreed to Settle

14.     Courts "presume that a settlement agreement was knowing and voluntary when the plaintiff is represented by counsel." *Mia*, 2008 WL 2570829 at *1 (upholding enforcement of oral settlement agreement).  The adequacy of counsel's advice regarding settlement is an improper factor in evaluating whether a settlement is knowing and voluntary. *Baptist v. City of Kankakee*, 481 F.3d 485, 490 (7th Cir. 2007).  The plaintiff has the burden of production over whether the agreement was knowing and voluntary. *Pierce v. Atchison Topeka & Santa Fe Ry. Co.*, 110 F.3d 431, 437-38 (7th Cir. 1997).

---

[2]   Grant Thornton wishes to make clear that Plaintiff's counsel has at all times conducted themselves in a professional and courteous manner, and that from Grant Thornton's perspective, they have zealously represented

15.    Here, there cannot be any dispute that Plaintiff knowingly and voluntarily agreed to settle her claims. Magistrate Judge Valdez and Plaintiff's counsel all explained the terms of the deal, and Plaintiff accepted the terms with full the understanding that she would dismiss her lawsuit against Grant Thornton. Plaintiff has never alleged that her counsel was incompetent, nor can she. And even if she did accuse her counsel of incompetence, her allegations would not only be frivolous but also irrelevant. *See Baptist*, 481 F.3d at 437-438. Plaintiff's agreement to settle her claims was knowing and voluntary.

**B.    The Parties' Oral Settlement Agreement is Enforceable Under Illinois Law**

16.    Under Illinois contract law, oral settlement agreements are enforceable if there is an offer, acceptance and a meeting of the minds on the terms of the agreement. *Lampe v. O'Toole*, 685 N.E.2d 423 (Ill. App. 1997); *Dillard*, 483 F.3d at 507; *Love v. Illinois Bell*, 210 Fed. Appx. 516 (7th Cir. 2006) ("an oral agreement to settle is enforceable – even if the parties expect to later reduce it to writing"). Courts look to the parties' objective conduct, and not their subjective beliefs, to determine whether there was a meeting of the minds. *Dillard*, 483 F.3d at 507, *citing Paxton-Buckley-Loda Educ. Ass'n, IEA-NEA v. Ill. Educ. Labor Relations Bd.*, 710 N.E.2d 538, 544 (Ill. App. 1999); *Love*, 210 Fed. Appx. at 518.[3]

17.    Plaintiff cannot possibly claim that there was no meeting of the minds between the parties. After a lengthy settlement conference, Plaintiff agreed to settle her claims in exchange for a substantial sum of money. Magistrate Judge Valdez, Plaintiff's own counsel and Grant Thornton's counsel all painstakingly outlined the terms of the settlement, and both parties – including Plaintiff – agreed that a deal had been reached. Indeed, Magistrate Judge Valdez's minutes orders from July 23 and July 31 unequivocally stated that "settlement [had been]

---

Plaintiff and kept her best interests in mind.

[3] It is well-established that when parties reach an agreement before a judge during a settlement conference, that agreement is exempt from the Statute of Frauds. *Locasto v. Locasto*, 518 F.Supp.2d 1025, 1030 (N.D. Ill. 2007) (internal cite omitted).

reached." (*See* Exhibits C and D). *See Locasto v. Locasto*, 518 F.Supp.2d 1025, 1029 (N.D. Ill. 2007) ("It was clear to the Court and to the parties and their counsel that this litigation was being settled."). The parties' counsel documented the terms of agreement in the Term Sheet, and only once Plaintiff was faced with actually signing the Term Sheet did she change her mind.

18.      But a mere change of heart is not a valid basis to avoid enforcement of an oral settlement agreement.   As the Seventh Circuit has stated: "If a party to a . . . suit who has previously authorized a settlement changes his mind . . . that party remains bound by the terms of the agreement." *Glass v. Rock Island Refining Corp.*, 788 F.2d 450, 454-455 (7th Cir. 1986). *See also Zilberstein v. Kendall College*, 2008 WL 2648922 (7th Cir. 2008) (enforcing oral settlement agreement that was reached during magistrate judge-supervised settlement conference); *Baptist v. City of Kankakee*, 481 F.3d 485 (7th Cir. 2007) (enforcing verbal settlement agreement in Title VII case despite plaintiff's "change of heart" and attempt to rescind the agreement); *Pittman v. Dolton Police Department*, 191 Fed. Appx. 465 (7th Cir. 2006) (enforcing verbal settlement agreement that was reached during settlement conference before magistrate judge; court did not allow plaintiff to "change his mind" about settling); *Taylor v. Gordon Flesch Co.*, 793 F.2d 858, 863 (7th Cir. 1986) ("a party cannot avoid the agreement merely because he subsequently believes the settlement is insufficient").

19.      Magistrate Judge Valdez and the parties' counsel bent over backwards to give Plaintiff an opportunity to honor the terms of the settlement agreement.  Magistrate Judge Valdez gave Plaintiff an additional seven days to think about whether she wished to move forward with the agreement, and Grant Thornton's counsel worked with Plaintiff's counsel to prepare a Settlement Agreement and General Release that accurately and fairly reflected the terms of the oral agreement.  Grant Thornton did not attempt to surreptitiously change any terms of the deal,

nor has Plaintiff alleged such. Rather, after further reflection Plaintiff decided that the terms of the settlement – which she had previously agreed to – were "insulting" and a "slap in the face."

20.      Magistrate Judge Valdez's instructions to Plaintiff leading into the seven-day consideration period were simple and straightforward: she should consider whether she wished to move forward with the agreement but she must *not* attempt to wring more money from Grant Thornton. Yet, that is exactly what Plaintiff tried to do by stating that she would settle only if Grant Thornton increased the settlement amount by 72%. Plaintiff's conduct not only contravenes Magistrate Judge Valdez's explicit instructions, but it also confirms that there was no confusion over the terms of the deal that had already been agreed to. Plaintiff merely used the seven-day period to try to strike a better deal. This is improper, and frankly, is an abuse of process.

WHEREFORE, Grant Thornton seeks an Order from this Court:

(a) enforcing the settlement agreement that was agreed upon by the parties;

(b) dismissing Plaintiff's Complaint with prejudice;

(c) compelling Plaintiff to execute the Settlement Agreement and General Release Agreement that has been prepared and agreed to by the parties' counsel; and

(d) awarding other relief that the Court determines is fair and just.

Dated: August 1, 2008                    Respectfully submitted,

                                         **GRANT THORNTON LLP**


                                         By: _____/s/ Chad W. Moeller
                                                 One of Its Attorneys

Chad W. Moeller
Sonya Rosenberg
Neal Gerber & Eisenberg LLP
2 N. LaSalle Street
Suite 2200
Chicago, Illinois 60606
(312) 269-8000

NGEDOCS: 1553277.1

# Exhibit A

## SETTLEMENT CHECKLIST/TERM SHEET

CASE NAME: _DEBRA LUSTER-WILSON_ vs. _GRANT THORNTON LLP_

CASE NO. _08_ CV _533_                    DATE: _July 23, 2008_

A.    PAYMENT OF MONEY TO: _D. Luster-Wilson_   FROM: _Grant Thornton LLP_

    1. Total amount to be paid: $ _____ REDACTED _____

    2. When: _within 14 days of execution of formal Settlement Agreement_

    ~~3. Payment terms:~~ _and dismissal of lawsuit, whichever is later_

    4. Does payment include attorney's fees? (Yes) or No

    5. Any third party liens to be paid from proceeds?   Yes or (No)

      a. If yes, to whom: _____

    6. Tax Treatment: ~~To be discussed between the parties~~ _1099_ $^{cwm}$

    7. Other payment terms: _Execution of formal Settlement Agreement with_ _Confidentiality, Covenant Not to Sue, Release, ~~and~~ non-disparagement etc_

B.    RELEASE OR COVENANT NOT TO SUE (Circle One): _Both_

    1. (a. One Way From Plaintiff(s) to Defendant(s)), or
      b. Mutual Release

    2. Scope of Release:

      a.   General:

        1) All claims raised in the litigation, or
        (2) All claims, whether or not raised in the litigation.

      b.   Limited: _____

    3. Scope of Covenant Not To Sue: _comprehensive (see 2(a)(2))_

4. Exceptions to release or covenant not to sue: _N/A_

5. Other Release or Covenant Not to Sue Terms: _N/A_

C.    CONFIDENTIALITY: (Yes) or No    MUTUAL: (Yes) or   No

1. What can be said about litigation?

   (a.)    Dispute amicably resolved, or
   b.      Nothing, or
   c.      Other: _____

2. Exceptions to confidentiality?

   (a.)    Attorneys
   (b.)    Tax advisors
   (c.)    Immediate family
   (d.)    As otherwise required by law
   e.      Other: _Delphine Hagslett Jones (best friend); however, prior to discuss any aspect of settlement, Plaintiff must advise Hayslett of existence of confidentiality agreement and specify that all discussion must remain absolutely confidential._

3. Liquidated damages in event of breach: Yes or (No)

4. Amount: (Not too large to avoid being a penalty) $ _____

D.    OTHER SETTLEMENT TERMS:

   (1) No admission of liability.  2. _Terms of Settlement Agreement supersede_ ⌐_to supplement and_ _this checklist._

E.    EMPLOYMENT CASES: 1. Ability to reapply: Yes or (No) 2. Type of reference: _dates of employment and job title only. Defendant to designate contact for Plaintiff to refer future inquiries for references._

2

F.    **EFFECTIVE DATE:**    *to be supplemented by a formal settlement Agreement*

1. A binding agreement today; or

2. No binding agreement until the typed settlement agreement is signed.

G.    **DISMISSAL OF LITIGATION AND ENFORCEMENT OF AGREEMENT (Circle one):**

1. Immediate dismissal with prejudice; Court cannot enforce agreement.

2. Dismissal with prejudice entered on _____; Court cannot enforce agreement after that date. (Choose date that allows sufficient time to execute written agreement and fulfill obligations.)

3. Immediate dismissal without prejudice that automatically converts to with prejudice on _____; Court cannot enforce agreement after that date.

4. Dismissal without prejudice that bars relitigation of underlying claims; Court retains jurisdiction to enforce settlement agreement; parties waive rights under FRCP 65 to have terms of agreement included in dismissal order. (Best for long-term obligations where confidentiality is desired.)

5. Consent decree that expressly includes settlement terms; Court retains jurisdiction to enforce decree. (Best for long-term obligations where confidentiality is not desired.)

H.    **DO PARTIES CONSENT TO MAGISTRATE JUDGE JURISDICTION?** Yes or No

I.    **CONFIRMING AND DOCUMENTING SETTLEMENT:**

1. Do parties wish to place settlement on the record?   Yes or No

2. Settlement terms to be incorporated in a typed written agreement?  Yes or No

   a. Typed agreement to be prepared by _Grant Thornton LLP_

      and sent to other parties on or before _July 30, 2008_

   b. Other parties to respond with changes, if any, by _August 8, 2008_

3. Typed settlement agreement to be executed on or before: _TBD_

4. Will settlement agreement be filed in court?   Yes or No

5. Other terms regarding documenting settlement: _standard settlement terms in agreement_

3

J.    DO PARTY REPRESENTATIVES HAVE FULL AUTHORITY TO ENTER INTO
      SETTLEMENT AGREEMENT?   Yes or No

      Identify party representatives and their titles: _____

      _____

      _____


K.    NEXT COURT DATE TO REPORT ON SETTLEMENT: _____

      AGREED TO:                                    AGREED TO:

                                                    *Chl Moeller*
      _____            _____
                                          Counsel for Grant Thornton LL

      _____            _____


      _____            _____


      _____            _____

# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEBRA A. LUSTER-WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 08 C 533 |
| v. | ) | |
| | ) | Judge Darrah |
| GRANT THORNTON LLP | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF CHAD W. MOELLER

I, Chad W. Moeller, state as follows under the penalties of perjury:

1.      I am an attorney in good standing who is presently licensed to practice law in the state of Illinois. I am authorized to practice in the U.S. District Court for the Northern District of Illinois, as well as the Court of Appeals for the Seventh Circuit.

2.      I have represented Defendant Grant Thornton LLP ("Grant Thornton" or the "Firm") throughout the litigation in the above-captioned matter. I represented Grant Thornton, along with two Grant Thornton employees, at the July 23, 2008 settlement conference before Magistrate Judge Maria Valdez.

3.      I verify that the factual assertions made in Defendant's Motion to Enforce the Parties' Settlement Agreement and to Dismiss Plaintiff's Complaint with Prejudice – including but not limited to the events of the July 23 settlement conference and my overhearing Plaintiff on her cell phone telling the other party on the line that the terms of the settlement agreement were "insulting" and "slap in the face" – are true, accurate and based on my first-hand knowledge of the relevant events during the period July 23 through July 31, 2008.

Dated: **Aug. 1, 2008**                          _____

# Exhibit C

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 3.2.1
### Eastern Division

Debra A. Luster−Wilson

                   Plaintiff,

v.

Grant Thornton, LLP.

                          Defendant.

Case No.: 1:08−cv−00533
Honorable John W. Darrah

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Wednesday, July 23, 2008:

      MINUTE entry before the Honorable Maria Valdez:Settlement conference held on 7/23/2008. General terms of settlement reached. Parties to contact YP by noon on 7/31/08 regarding status of settlementMailed notice(yp, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

# Exhibit D

## UNITED STATES DISTRICT COURT
### FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 3.2.1
### Eastern Division

Debra A. Luster−Wilson

                          Plaintiff,

v.                                              Case No.: 1:08−cv−00533
                                                Honorable John W. Darrah
Grant Thornton, LLP.

                          Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Thursday, July 31, 2008:

        MINUTE entry before the Honorable Maria Valdez: Plaintiff having advised the
court that the settlement previously reached has been rejected and the parties not
requesting any further settlement conference. All matters relating to the referral of this
action having been resolved, the case is returned to the assigned judge. Judge Honorable
Maria Valdez no longer referred to the case.Mailed notice(yp, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of
Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was
generated by CM/ECF, the automated docketing system used to maintain the civil and
criminal dockets of this District. If a minute order or other document is enclosed, please
refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our
web site at ***www.ilnd.uscourts.gov***.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing ***Defendant's Motion to Enforce the Parties' Settlement Agreement and To Dismiss Plaintiff's Complaint With Prejudice*** was sent to the following:

> Kimberly A. Ross
> Cremer Kopon Shaughnessy & Spina LLC
> 180 N. LaSalle Street, Suite 3300
> Chicago, Illinois 60601

was sent via the Court's ECF e-mail system on August 1, 2008.


_____ \s\ Chad W. Moeller _____
Chad W. Moeller


NGEDOCS: 1553537.1